ORDERED.

**Dated:  December 02, 2016**

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re

MARIE A. EXUME, and                                     Case No. 8:13-bk-15642-KRM
JEAN D. GANTHIER                                        Chapter 7

        Debtors.
_____/

**MEMORANDUM OPINION
AND ORDER ON TRUSTEE'S MOTION FOR TURNOVER**

        Shortly before this case was converted from Chapter 13 to Chapter 7, the Debtors

received about $17,000 of insurance proceeds after their car was "totaled" in an automobile

accident.  The issue before the Court is whether the insurance proceeds are property of the

Chapter 7 estate.  If so, they are subject to turnover under 11 U.S.C. § 542 of the Bankruptcy

Code.[1]  For the reasons set forth below, the Court concludes that the insurance payment, and the

assets purchased therewith, did become property of the Chapter 7 estate.  The Trustee's Motion

for Turnover will be granted.

_____
[1] Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

BACKGROUND

The Debtors filed a joint Chapter 13 petition on November 26, 2013.  On the petition date, they owned two cars, a 1993 Honda, which they valued at $800, and a 2006 Toyota truck, which they valued at $10,000.  On their Schedule C, the Debtors claimed as exempt $5,100 of assets, including $800 allocated to the 1993 Honda and $2,695 to the 2006 Toyota.[2]

Post-petition, the Debtors were involved in an automobile accident, in which the 2006 Toyota was totaled.[3]  Less than a month later, on September 7, 2014, the Debtors voluntarily converted their Chapter 13 case to Chapter 7.[4]  Sometime during that 29-day period, the Debtors received $17,201.12 in insurance proceeds from the accident for the destruction of the 2006 Toyota, only $2,695 of which was claimed as exempt.  The Debtors admit to using the insurance proceeds to purchase a 2008 Honda Accord for $3,500, make repairs to that vehicle, and repair their home.[5]

On December 1, 2014, the Debtors filed a Motion to Reconvert to Chapter 13,[6] which was granted.[7]  Then, on March 2, 2015, the Court granted the Debtors' Motion to Reconvert to Chapter 7.[8]

---

[2] The Debtors did not claim any portion of their real property as exempt.

[3] As stipulated, the date of the accident was August 9, 2014.

[4] The Debtors were unable to confirm their Chapter 13 plan.

[5] Debtors also admit that after the filing of the Chapter 13 petition, the 1993 Honda was sold, and the proceeds of that sale were used to purchase a 1998 Acura Integra GS, without notice to the Trustee or permission from the Court.  Doc. Nos. 86, and 95 at 1.

[6] Doc. No. 57.

[7] Doc. No. 61.

[8] Doc. No. 75.

In the Chapter 7 case, the Debtors did not disclose receipt of the insurance proceeds or the acquisition of the 2008 Honda.  It was not until July 31, 2015, that the Trustee filed a motion seeking turnover of the insurance proceeds from the loss of the 2006 Toyota, the value of the replacement vehicle purchased with the insurance proceeds, and the documents relating to the vehicles, the insurance policy, and the bank statements for the time period prior to conversion of the Debtors' bankruptcy case through and including the month the insurance proceeds were received and deposited.[9]  The Trustee asserts that the Debtors' personal property, per the schedules, exceeds the aggregate exemption allowed under Art. X, § 4 of the Florida Constitution and Chapter 222, Florida Statutes.  Thus, she argues that the property, including the total amount of the insurance proceeds, be repaid to the bankruptcy estate.  It is the Trustee's contention that because the insured 2006 Toyota was property of the estate in the Chapter 13 case, the insurance proceeds paid because it was totaled became property of the estate, as did any property that Debtors acquired with the proceeds.[10]

The Debtors filed their response on August 18, 2015,[11] relying on § 348(f)(1)(A), which provides that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."[12]  The Debtors argue that because the insurance policy that they owned on the petition date lapsed post-petition (and they were required to renew the policy by a payment from post-petition income) the "renewal policy" was not part of the bankruptcy

---

[9] Doc. No. 84.

[10] §§ 541(a)(6) and 1306.  The Trustee filed a brief supporting her motion to compel turnover of property of the estate on September 29, 2015.  Doc. No. 93.

[11] Doc. No. 86.  The Debtors later filed a response to the Trustee's brief on October 7, 2015, one day after the allotted deadline.  Doc. No. 95.

[12] § 348(f).

estate on the original petition date.  Thus, they contend that the proceeds therefrom did not become part of the Chapter 7.

DISCUSSION

Under § 348(f)(1)(A), courts must look to: (1) whether the debtor's property was property of the estate on the date of original petition, and (2) whether the property remained in the possession of the debtor on the date of conversion.

Section 541(a) provides that property of the estate is comprised of "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case," including "proceeds, product, offspring, rents, or profits of or from property of the estate," and  "any interest in property that the estate acquires after commencement of the case."[13]

The 2006 Toyota was property of the estate on the original petition date, subject to Debtors' claim of exemption.  The 2006 Toyota, valued by Debtors at $10,000 was not subject to any liens.  Thus, at least $7,305 of the non-exempt portion of the Debtors' stated value of this vehicle belonged to the Chapter 13 estate.[14]

The insurance policy owned by the Debtors also became property of the estate on the petition date.  It is not disputed that the Debtors' renewal of that policy resulted in a resumption of the same coverage under the same policy.  It was the same insurer and had the same number as the original policy.[15]  The same policy which was owned on the petition date covered the 2006 Toyota when it was totaled.  The Court therefore concludes that the funds paid to the Debtors

---

[13] § 541(a)(1), (6), and (7).

[14] § 541(a)(1).

[15] At the hearing, counsel for the debtors indicated that the renewed policy is under the same policy number as the policy that was in place at the time of filing.

under that policy, in excess of the $2,695 exemption, became property of the Chapter 13 estate, in reliance on the reasoning of the following cases.[16]

In *Ford Motor Credit Company v. Stevens,*[17] the Eleventh Circuit ruled that the finance company was required to refund the insurance proceeds it received, after the vehicle securing its loan was totaled, to the extent the payment exceeded the amount required by the Chapter 13 plan. The court reasoned that:

> "Where the debtor has an interest in the insurance proceeds, however, the proceeds are considered property of the bankruptcy estate and distribution of the proceeds is governed according to the terms of the bankruptcy plan."[18]

The insurance policy in *Stevens* protected both the owner and the finance company in the event of destruction of the insured truck.

In *In re Bailey,*[19] a bankruptcy court decided that the insurance proceeds were not property of the debtor's estate, but that was because the debtor, when it purchased the subject vehicle, had assigned to the lender all monies payable under the vehicle insurance policy. The

---

[16] *Ledford v. Fidelity Financial Services*, 174 B.R. 949, 951-52 (Bankr. S.D. Ohio 1994) ("It is well settled that ownership of an insurance policy that is property of a debtor's estate does not necessarily result in a determination that the debtor's estate owns the proceeds from a policy… the issue of whether proceeds are property of a debtor's estate is not simple, but is dependent upon the nature of the policy and the specific provisions governing the parties' interests in the payment of policy proceeds.").

[17] 130 F.3d 1027 (11th Cir. 1997).

[18] *Id.* at 1029 (citing, e.g., *In re Feher*, 202 B.R. 966, 970 (Bankr. S.D. Ill. 1996)). In *Stevens*, The finance company ("FMCC") was named as the loss-payee on the debtor's car insurance policy. After the debtor's Chapter 13 plan was confirmed and payments had been made to FMCC, the vehicle was totaled. The insurance company paid FMCC, but it was an amount equal to the remainder of the debt owed to FMCC, plus interest, computed a higher rate than that which the Chapter 13 plan provided. FMCC thus received $1,852.83 more than it would have if its debt had been fully paid through the Chapter 13 plan. The Chapter 13 trustee demanded that FMCC return the overpayment. The Eleventh Circuit determined that the insurance proceeds acted as a substitute for the insured property and fell within property of the estate. *Id.* at 1030 (citing *Bradt v. Woodlawn Auto Workers (In re Bradt)*, 757 F.2d 512, 515 (2d Cir.1985) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977)) (holding that broad definition of "proceeds" under 11 U.S.C. § 541(a)(6) encompasses insurance proceeds that simply represent a "conversion in form of property of the estate"); *In re Suter,* 181 B.R. 116, 120 (Bankr.N.D.Ala.1994) (observing that, "[f]rom a secured creditor's perspective, property insurance is a substitute for the collateral insured").

[19] 314 B.R. 103 (Bankr. N.D. Miss. 2004).

bankruptcy court relied on the rationale of a Fifth Circuit decision, *In re Equinox Oil Company, Inc.*, 300 F.3d 614 (5th Cir. 2002):

> "The central question when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to the debtor when the insurance pays a claim."

The bankruptcy court concluded that the debtor would have had no legal right to the excess insurance proceeds because all of the insurance proceeds had been assigned to the lender.[20]

Here, the Debtors held the legal right to all of the insurance proceeds on the petition date.[21] The vehicle covered by the insurance policy was owned free and clear. After the Chapter 13 petition was filed, the insurance served to protect both the Debtors and the bankruptcy estate, to the extent of its value in excess of Debtors' claimed exemption. The insurance company paid Debtors $17,201 for the destruction of the 2006 Toyota (which Debtors valued at only $10,000). Thus, as much as $14,506 of the insurance proceeds ($17,201 less the $2,695 claim of exemption) became property of the Chapter 13 estate less than 30 days before the case was converted to Chapter 7.

To the extent that the proceeds went into Debtors' bank account before the date of conversion, and can be traced to the purchase of the 2008 Honda (the replacement car) and any other assets, such assets would be property of the Chapter 7 estate under § 348(f)(1)(A). So, too, would the remaining proceeds as of the date of conversion.

---

[20] The debtor filed for relief under Chapter 13 and confirmed a plan. Thereafter, the vehicle was totaled. As in *Stevens*, the insurance proceeds exceeded the unpaid balance of the secured portion of the lender's claim. The creditor sought to keep the excess to offset its unsecured claim, which was not going to be paid at all under the Chapter 13 plan. The Chapter 13 trustee argued, unsuccessfully, that the excess proceeds were property of the estate, which should be distributed pro rata to all unsecured creditors.

[21] The Debtors dispute the applicability of these cases. To be clear, the above mentioned cases are factually distinguishable in that the disputes arose within the context of a Chapter 13 case, and not a Chapter 7 case. The Debtors did not cite any case law on this point, despite the fact that the Court granted the parties' request for additional time to file supplemental briefs on this issue.

It is not clear, however, how much of the proceeds remained in the Chapter 13 estate when the case was converted to Chapter 7 on September 7, 2014.  The parties have not submitted any record of deposits, expenditures or balances between the time of receipt of the insurance payment and the date of conversion.

For these reasons, the Court finds it appropriate to grant, in part, the Trustee's Motion for Turnover.  The Debtors will be required to turn over the non-exempt value of the 2008 Honda, the remaining insurance proceeds from the loss of the 2006 Toyota and any assets purchased therefrom, to the extent they were not spent prior to the first conversion to Chapter 7; and the documents relating to the vehicles, the insurance policy, and the bank statements for the time period prior to conversion of the Debtors' bankruptcy case through and including the month the insurance proceeds were received and deposited.[22]  Accordingly, it is hereby

ORDERED:

1.  The Trustee's Motion for Turnover is GRANTED, in part.

2.  The Debtors are directed within 30 days from the date of this order to turn over to the Trustee the non-exempt value of the 2008 Honda, any other assets purchased from the insurance payment, and the amount of insurance proceeds remaining in Debtors' possession on September 7, 2014, as may be determined by the parties' stipulation or by a further evidentiary hearing.

Clerk's Office to serve.

---

[22] Doc. No. 84.